# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSÉ CONEJO,                                )
    *Plaintiff,*                      )
                  )
v.                                          )
                  )    Civil No. 17-CV-1802
AM. FED'N OF GOV'T EMPS.,                    )
AFL-CIO,                                     )
    *Defendant.*                      )
                  )
_____ )

## MEMORANDUM OPINION

Before the Court are defendant American Federation of Government Employees, AFL-CIO's ("AFGE") Motion to Dismiss [18], as amended [19], plaintiff José Conejo's ("Conejo") Opposition thereto [20], defendant's Reply in Support thereof [21], and plaintiff's Sur-Reply in Opposition thereto [22].

After reviewing the pleadings and the record in its entirety, the Court shall **DENY** defendant's Motion to Dismiss.

### I.)     BACKGROUND[1]

Conejo is the Director of Policy and Employee Relations at the U.S. Government Publishing Office ("GPO"), an executive agency. ECF No. 1 ¶ 5. He has been in that role since December 3, 2013. *Id.* As the Director of Policy and Employee Relations, Conejo is charged with,

---

[1] The Court accepts as true all well-pleaded facts in plaintiff's Complaint and Amended Complaint for the purpose of adjudicating defendant's Motion to Dismiss. All facts are taken from plaintiff's Complaint (ECF No. 1) and Amended Complaint (ECF No. 17). *See, e.g., Liff v. Off. of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 915 (D.C. Cir. 2018). The Court also draws all inferences from those facts in plaintiff's favor, as he is the non-movant. *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014). The Court is also cognizant that *pro se* plaintiffs are held to a "less stringent" pleading standard than are lawyers and that his complaint is to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, where applicable, the Court may consider plaintiff's "*pro se* affidavits and exhibits, as well as public records subject to judicial notice," in construing the allegations in the Complaint. *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (citations omitted).

*inter alia*, "providing assistance to supervisors/managers in taking corrective actions for" employee misconduct. *Id.*

In that role, Conejo works with the AFGE, "a labor organization representing employees of the federal government." ECF No. 19 at 3. AFGE divides its organizations "geographically by 'Districts'" and by "employment sites," as "'Locals.'" *Id.* Specifically, Conejo worked directly with the President of AFGE Local 2876 in exercising his duties. ECF No. 1 ¶ 6. At times relevant to the Complaint, Tina Mingo ("Mingo") was the President of AFGE Local 2876. *Id.*

On or about April 20, 2017, Mingo allegedly engaged in serious misconduct, and shortly thereafter, her supervisor at AFGE, along with the Office of Labor Relations, "engaged Plaintiff's office" for assistance. *Id.* ¶ 7. She engaged in misconduct again on or about April 27, 2017. *Id.* ¶ 9. On or about May 26, 2017, Mingo "was provided with formal written notice that her supervisor . . . would be recommending a proposed removal from Federal service." *Id.* ¶ 10. Plaintiff's staff assisted AFGE's management with the issuance of such notice. *Id.*

On or about April 20, 2017, Kimberly Warner ("Warner"), the AFGE Local 2876 Steward, engaged in misconduct. *Id.* ¶ 11. She engaged in misconduct again on or about April 27, 2017. *Id.* ¶ 13. On or about May 3, 2017, Warner "was provided with formal written notice that her supervisor . . . would be recommending a proposed 90-days suspension." *Id.* ¶ 14. "Plaintiff's staff assisted management with the issuance of the referenced notice." *Id.*

On or about June 8, 2017, Nathaniel Nelson ("Nelson"), a "National Representative" of AFGE's "14th District, Washington, D.C.," *see* ECF No. 13-2 at 5, filed an allegedly false, substantially false, and/or slanderous unfair labor practice charge against the GPO, claiming, *inter alia*, that (1) Conejo "has a history of committing 5 U.S.C. § 7116(a)(5) violations by bypassing the exclusive representative and going directly to the bargaining unit member," (2) "[a] union

investigation reveal[ed] that Mr. Conejo has a history of discriminating against women and preying on women for no just cause," (3) that Conejo is "100% unfit to work in any Government Agency," and (4) that "Conejo should be removed immediately. ECF No. 1. ¶ 15. Nelson further stated (5) that it was not possible for AFGE to have an amicable working relationship with the GPO "as long as Mr. Conejo remains as an employee at the GPO," (6) that, unquestionably, "Conejo will respond to this complaint by taking immediate retaliation and reprisal against some wom[e]n at the agency," and finally (7) that "[Conejo] will continue to engage in this type of activity without intervention." *Id.*

On or about June 30, 2017, the GPO's Chief Human Capital Officer, Ginger T. Thomas ("Thomas") retired and, at some time prior to that date, she endorsed Conejo to assume that position upon her departure. *Id.* ¶ 23. Upon her departure, "because of" Nelson and Mingo's allegedly defamatory conduct, Conejo was not selected to fill that position on a temporary basis. *Id.* Owing to the alleged irreparable harm and damage to Conejo's reputation due to AFGE's conduct, Conejo "is not likely to be considered and selected" to fill the position on a permanent basis, but-for AFGE's wrongful conduct. *Id.*

On or about July 31, 2017, management issued its proposed notices of removal to Mingo and Warner for their alleged misconduct. *Id.* ¶ 16.

Then, on or about August 7, 2017, Nelson authored and sent an allegedly false, substantially false, and/or slanderous e-mail to one of Conejo's employees, GPO management, another GPO employee who was being disciplined for misconduct, and AFGE District 14's National Vice President. *Id.* ¶ 17. Specifically, that e-mail stated that Conejo "is a known discriminator of women, and this person's entire employment application has been falsified." *Id.* The e-mail further purported to place "GPO on notice that this monster," referring to Conejo, "will

be publically exposed for the horrible person that he really is. Now is the time to get rid of your [l]abor relations and employee relations supervisors." *Id.*

One week later, on or about August 14, 2017, Nelson then telephoned the GPO's Chief Financial Officer, Steve Shedd ("Shedd"), and stated that Conejo "is racist and discriminatory against black women, a corrupt manager, and a monster." *Id.* ¶ 18.

Two days thereafter, on or about August 16, 2017, Nelson authored and sent yet another allegedly false, substantially false, and/or slanderous e-mail to Conejo's employees, Conejo's supervisor, GPO's Acting General Counsel, other GPO employees who were being disciplined for misconduct, AFGE District 14's National Vice President, the U.S. Office of Personnel Management ("OPM"), and the U.S. Office of Special Counsel. *Id.* ¶ 19. That e-mail stated that (1) Conejo is "a corrupt manager and has a documented history of discriminating against black females," (2) Conejo "is totally unfit to be a federal employee," (3) Conejo "proposed the adverse action on Ms. Mingo and Ms. Warner," and (4) Conejo "was part of corrupt and discriminatory management officials that travel from agency to agency to inflict pain and discrimination against black females." *Id.* Further, the e-mail stated that (6) race and sex played a major role in preparing the adverse actions against Ming and Warner, (7) there "is little doubt that" such adverse actions were the product of Conejo "being mean spirited" and having a retaliatory animus, and (8) Conejo is a "predator and rouge manager." *Id.*

Then, on August 23, 2017, Mingo approached Conejo and threatened him by saying, "I am going to make things up about you to hurt you." *Id.* ¶ 20. Mingo further claimed that she had knowingly communicated false information about Conejo to (1) GPO's Acting Chief Information Officer and (2) GPO's Chief Administrative Officer, Conejo's second-level supervisor, for the purpose of damaging Conejo's character and good standing with GPO leadership so that Conejo

would not be considered for a career advancement opportunity. *Id.* Mingo stated that she would continue to make such false statements about Conejo's character knowingly, "with the help of AFGE National," to the GPO Director, Deputy Director, "and many others," and stated specifically that she "would stop at nothing, unless her disciplinary action disappears." *Id.*

The next day, on August 24, 2017, Nelson and Mingo authored and filed an allegedly false or substantially false and/or slanderous unfair labor practice charge against the GPO. *Id.* ¶ 21. Mingo circulated the written document. *Id.* Therein, Nelson and Mingo stated, "[t]he union views Mr. Conejo as highly incompetent, vindictive, retaliatory, and totally unfit to work in any Federal Government Agency." *Id.* The charge continued, "[a]t some point, the agency (GPO) will have to realize that Mr. Conejo is responsible for a significant amount of unfair labor charges because of his personal retaliatory practices against labor union officials." *Id.* Nelson and Mingo attached Nelson's August 16, 2017 e-mail to the charge. *Id.*

Conejo filed the instant action on September 1, 2017. *See generally* ECF No. 1. Conejo amended his complaint with leave of Court. *See* ECF No. 17.

In the Amended Complaint, Conejo further alleges that on or about November 23, 2017, after Conejo filed suit, Nelson authored and sent yet another e-mail to GPO's senior agency management, including the head of the GPO. Amend. Compl. ¶ 22, ECF No. 13 [hereinafter Amend. Compl.]. Therein, Nelson stated, *inter alia*, that (1) Conejo "obtained private information to file a civil law suit"; (2) Conejo "was a convicted sexual predator, harasser, and was on a campaign of terror against innocent women"; (3) Conejo "has a documented history of abusing and sexually harassing women"; (4) Conejo "continues his assault against women"; (5) Conejo "has a history of harassing women, and conducting reprisal and retaliation against them for sexual reasons"; (6) Conejo "was a predator (sexual)"; (7) Conejo "harassed some women to the point

they lost control of their faculties and one woman tried to commit suicide 4 times because of" Conejo; (8) Conejo "has a documented history of sexual harassment against women"; and (9) Conejo "was a sexual harasser of women and a known liar." *Id.*

Also on November 23, 2017, "or sometime thereafter," Nelson circulated the foregoing nine statements to U.S. Representative Gregg Harper, who was a member of the Joint Committee on Printing, which oversees the GPO, *id.* ¶ 23; U.S. Senator Richard Shelby, who was the Chairman of the Joint Committee on Printing, *id.* ¶ 24; and U.S. Representative Elijah Cummings. *Id.* ¶ 25.

Also, on or about November 23, 2017, AFGE's authorized agent or agents filed a Complaint with the U.S. Office of Special Counsel and with GPO's Office of Inspector General, which included similar statements about Conejo. *Id.* ¶¶ 26–27.

Then, on or about December 19, 2017, Nelson authored and sent another e-mail to a senior GPO management official, and copied other agency officials, an unknown individual, and Mingo. *Id.* ¶ 28. Therein, Nelson wrote,

> I have reason to believe that you and your group have planned to impose the maximum illegal and unjustified punishment on Ms[.] Tina Mingo based on the work and recommendation by an agency convicted sexual predator. I will not give you the luxury of saying you did not know you were aiding and supporting a known convicted sexual predator.
>
> I believe you have programmed yourself to take this action, regardless of the consequences. I urge and encourage you to stop aiding and carrying out the evil work of this convicted predator. Check with your IG and the special counsel. The decision is yours. Please stop this cruel assault on our Black women.

ECF No. 13-2 at 8. Conejo further alleges that Nelson circulated these statements to the District of Columbia Chapter of the National Association for the Advancement of Colored People (NAACP) and to the American Civil Liberties Union (ACLU). Amend. Compl. ¶ 29.

Conejo brings common law tort claims sounding in defamation, slander, libel, libel *per se*, and invasion of privacy (false light).

## II.) DISCUSSION

### A. SUBJECT-MATTER JURISDICTION

#### a. *Rule 12(b)(1) Legal Standard*

AFGE moves to dismiss plaintiff's claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 18. District courts possess limited jurisdiction, and their power to adjudicate cases is derived from either Article III of the U.S. Constitution or an express statutory provision. *See Steel Co. v. Citizens for Better Envmt.*, 523 U.S. 83, 89 (1998).

Accordingly, the Court has the foremost obligation first to ascertain whether it is vested with jurisdiction over the subject matter of the action. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). The Court must engage in this inquiry before it turns to the Rule 12(b)(6) motion. *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999). Absent subject-matter jurisdiction, this Court is powerless to make any further inquiries and has no power to adjudicate the substance of AFGE's Rule 12(b)(6) motion, which is necessarily a judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'").

As a Rule 12(b)(1) motion concerns the Court's ability to hear a particular claim, it must scrutinize Conejo's allegations more closely than it must under a Rule 12(b)(6) motion. *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003). At bottom, a plaintiff bears the burden of

establishing the Court's jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182 –83 (1936). Where subject-matter jurisdiction does not exist, the Court's inquiry is at its end. *Steel Co.*, 523 U.S. at 94.

The Court concludes that Conejo has met his burden to establish that this Court is vested with subject-matter jurisdiction, and shall deny AFGE's Rule 12(b)(1) motion.

    *b.*    ***The Civil Service Reform Act does not preempt Conejo's tort claims.***

Notwithstanding the exclusive state-law nature of Conejo's claims, he advances that this Court is vested with subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) "because the Plaintiff and Defendant/Defendant's authorized agents are citizens of different states and the amount in controversy exceeds $75,000." ECF No. 1 ¶ 2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

Here, Conejo alleges, in each of his pleadings, that he is a citizen of the Commonwealth of Virginia. *See* ECF No. 1 at 10; ECF No. 13-2 at 4. By its pleadings, AFGE admits that it is a citizen of the District of Columbia. *See* ECF No. 18; ECF No. 19 at 26. AFGE does not dispute that Conejo is a Virginia citizen, and does not argue that it has a domicile other than the District of Columbia. The parties are thus diverse.

Conejo alleges that the amount in controversy totals at least $3,911,597.00 in compensatory and punitive damages. Amend. Compl. ¶ 31. AFGE does not challenge that amount for the purposes of its motion. Accordingly, at this juncture, the Court possesses subject-matter jurisdiction over this dispute, unless Congress has expressly revoked it. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959).

In response, AFGE principally argues that the Civil Service Reform Act ("CSRA")

preempts Conejo's claims. ECF No. 19 at 8. Specifically, AFGE submits that "[c]laims arising

in the context of federal employment are substantially constrained by laws enacted by Congress

that provide for 'an integrated scheme of administrative and judicial review.'" *Id.* (quoting

*Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 536 (1989)). The CSRA "comprises the

comprehensive statutory scheme governing employment in the federal sector." *Id.* (citations

omitted). The CSRA is codified, in large part, at 5 U.S.C. §§ 1101 *et seq. Elgin v. Dep't of the

Treasury*, 132 S. Ct. 2126, 2134 (2013).

AFGE correctly articulates this general rule, but that rule is wholly inapplicable to the facts

of this case. AFGE cites to a string of authorities that are wholly inapposite to the facts in this

case. For example, it points to *Hall v. Clinton*, 143 F. Supp. 2d 1, 5 (D.D.C. 2001), where a district

court determined that it lacked jurisdiction over a White House *employee*'s tort claims. ECF No.

19, at 19. As another example, it points to *Saul v. United States*, an out-of-circuit case that

articulates the unremarkable proposition that "Congress intended to oust state tort law from the

realm of federal *employment*." 928 F.2d 829, 843 (9th Cir. 1991) (emphasis added). Similarly,

AFGE points the Court to another non-binding, unpersuasive decision from the Eleventh Circuit,

which holds that the CSRA preempts intentional torts that would *otherwise come within the ambit*

of the CSRA. ECF No. 19 at 10 (citing *Broughton v. Courtney*, 861 F.2d 639, 643–44 (11th Cir.

1988)).

Devoting the bulk of its response to authorities that have no bearing on the facts at hand,

AFGE finally points the Court to the Federal Service Labor-Management Relations Statute

("FSLMRS"), 5 U.S.C. §§ 7101 *et seq.* ECF No. 19 at 12. The FSLMRS articulates the rights

and duties of labor organizations and management officials of executive agencies. AFGE attempts

to squeeze Conejo's complaint into the reaches of the FSLRMS, re-casting Conejo's claims as allegations of unfair labor practices, which, according to AFGE, are subject to the administrative procedures outlined in the FSLRMS. ECF No. 19 at 14. AFGE is mistaken.

In reviewing the applicability of a statute, the Court must "begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). AFGE is correct that, in general, the FSLRMS vests the General Counsel of the Federal Labor Relations Authority with investigatory powers over a charge against a labor organization for "having engaged in or engaging in an unfair labor practice." 5 U.S.C. § 7118(a)(1). Conejo is a "person" and AFGE is a "labor organization." *Id.* §§ 7103(a)(1), (a)(4)(A).

However, § 7118(a) clearly contemplates that not all charges will be "unfair labor practices." Section 7118(a) provides that in "any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint." *Id.* § 7118(a)(1).

Thus, AFGE is correct that "the dispositive inquiry on CSRA preemption is whether the conduct falls within the confines of the statute." ECF No. 19 at 13 (citing *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1998)). But the Court must first determine whether the CSRA is even triggered here. For the CSRA to apply, the alleged tortious conduct must fall within the statutory definition of "unfair labor practice." It does not.

>    i.    *Conejo does not allege that AFGE engaged in an unfair labor practice.*

Conejo's allegations do not constitute unfair labor practices within the meaning of the FSLRMS. AFGE admits that it is a "labor organization representing employees of" the federal

government. ECF No. 19 at 3. It notes, also, that Conejo is a "person" within the meaning of the FSLRMS.

AFGE fails to address the relevant statutory provision defining "unfair labor practice" or the relevant regulation defining the term in its motion to dismiss. In fact, AFGE does not explain its theory underpinning its legal conclusion that Conejo's allegations are in any way "unfair labor practices" within the meaning of the FSLRMS.

The FSLRMS defines an "unfair labor practice" by a labor organization as one of any number of eight discrete acts, almost all of which contemplate action involving such an organization's interactions with "employees" or "members." 5 U.S.C. §§ 7116(b)(1)–(8). The Federal Labor Relations Authority has incorporated this definition by reference in its implementing regulations. *See* 5 C.F.R. § 2421.3(d) ("Unfair labor practices has the meaning as set forth in 5 U.S.C. [§] 7116.").

The FSLRMS defines an "employee" as "an individual employed in an agency; . . . *but does not include* a supervisor or *management official*." 5 U.S.C. §§ 7103(a)(2)(A), (B)(ii) (emphases added). While Conejo is employed in the GPO, which is an agency, *see id.* § 7103(a)(3), he has alleged—and AFGE has admitted, in the first sentence of its response—that he is a management official. *See* ECF No. 19 at 2 ("Plaintiff is a management official at the United States Government Publishing Office."). Accordingly, 5 U.S.C. §§ 7116(b)(1)–(4), (7)–(8) expressly do not apply to Conejo's claims, because each of those provisions only applies to "employees," and Conejo, by definition, is exempt from the status of "employee" as that term is used in the statute. For good measure, 5 U.S.C. § 7116(b)(3) provides that a labor organization may engage in an unfair labor practice when it takes certain actions against "member[s] of the labor organization." Conejo is not a member of the labor organization.

Thus, the only remaining provisions under which AFGE can sustain its theory of CSRA preemption are 5 U.S.C. § 7116(b)(5), which proscribes a labor organization's "refus[al] to consult or negotiate in good faith with an agency as required by [the FSLRMS]," or 5 U.S.C. § 7116(b)(6), which prohibits a labor organization from "fail[ing] or refus[ing] to cooperate in impasse procedures and impasse decisions are required by [the FSLRMS]." Here, there is no allegation by either Conejo or AFGE that AFGE failed or refused to cooperate in any impasse procedure.

Thus, the inquiry is whether Conejo's allegations could reasonably be read to claim that AFGE refused to consult or negotiate in good faith with the GPO. Such a reading is entirely implausible. Based upon the allegations in the complaint, a significant number, if not all, of the alleged acts occurred after the negotiation procedures were concluded. Indeed, Conejo alleges that the GPO provided Warner with her formal written notice of proposed suspension on May 3, 2017. ECF No. 1 ¶ 14. He alleges that the GPO provided Mingo with her formal written notice of proposed removal on May 26, 2017. *Id.* ¶ 9. Only after these dates, on June 8, 2017, did Nelson, AFGE's agent, begin to engage in the allegedly tortious conduct, which had nothing whatsoever to do with negotiating the terms of Warner and Mingo's employment relationship with GPO. *Id.* ¶ 15.

Moreover, the GPO issued its final decision as to Warner and Mingo on July 31, 2017. *Id.* ¶ 16. Thereafter, on at least thirteen separate occasions, beginning in August 2017 and continuing through December 2017, long after any "negotiations" could possibly have been concluded as to those two employees, Nelson allegedly continued to engage in tortious conduct against Conejo. *Id.* ¶¶ 17–19, 21; Amend. Compl. ¶¶ 22–29. This alleged conduct had nothing whatsoever to do with negotiations or consultations and was, if proven, as a matter of law, pure harassment.

Moreover, in an analogous context, the Supreme Court has explained that the Labor Management Relations Act, 29 U.S.C. § 158, does not preempt intentional tort claims, even if they arise in the employment context. Indeed, there, as here, the

> exercise of state jurisdiction [over defamation claims] would be a merely peripheral concern of the Labor Management Relations Act, provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true of false. Moreover, we believe that an overriding state interest in protecting its residents from malicious libels should be recognized in these circumstances.

*Linn v. United States Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 61 (1966). For similar reasons, the Court concludes as a matter of law that the CSRA does not preempt the alleged tortious conduct, given the relationship between the parties, the nature of the alleged acts, and the timing of the alleged acts—none of which AFGE disputes. The Court shall therefore deny AFGE's Rule 12(b)(1) motion. The Court retains subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## B. FAILURE TO STATE A CLAIM

### a. *Rule 12(b)(6) Legal Standard*

To overcome a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not necessary," a plaintiff must advance "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). At this stage, the Court will "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). A claim is considered plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation and internal quotation omitted). Courts do not inquire into the probability of the

allegations, but instead evaluate whether there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

As the Court sits pursuant to its diversity jurisdiction, it is bound "to apply state substantive law and federal procedure law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. Co. v. Tomlins*, 304 U.S. 64 (1938); *see also Kalxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012). Although the District of Columbia is not a state, it is "well established that" federal courts in the District of Columbia Circuit "will apply *Erie* principles to the District of Columbia Court of Appeals." *Hall v. C&P Tele. Co.*, 793 F.2d 1354, 1356 (D.C. Cir. 1986).

The Court shall apply District of Columbia substantive law to assess whether Conejo states plausible claims under that jurisdiction's law of torts. *Accord BWX Elecs., Inc. v. Control Data Corp.*, 929 F.2d 707, 710 (D.C. Cir. 1991).

### b. *Conejo's claims are not time-barred.*

The District of Columbia prescribes a statute of limitations within which plaintiffs must bring their claims. Claims are barred by the doctrine of laches if they are not brought within this time period. For libel or slander, a plaintiff must bring his action within one year "from the time the right to maintain the action accrues." D.C. Code Ann. § 12-301(4). For false light invasion of privacy, the statute of limitations is three years. *Id.* § 12-301(8).

Here, Conejo alleges that Nelson, as AFGE's agent, first engaged in defamatory conduct resulting in harm on or about June 8, 2017. ECF No. 1 ¶ 15. He filed suit on September 1, 2017. *See generally id.* Conejo further alleges that Nelson and other agents of AFGE first engaged in false light invasion of privacy resulting in harm on or about November 23, 2017. Amend. Compl.

14

¶ 22. Conejo timely amended his complaint on December 23, 2017 and included these allegations.

ECF No. 13-2. Thus, Conejo's tort claims are not time barred.

### c.   *Conejo states a plausible claim of defamation under District of Columbia law.*

To state a claim for defamation under District of Columbia law, a plaintiff must plead

facts which, if true, would establish:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Doe No. 1 v. Burke*, 91 A.3d 1031, 1044 (D.C. 2014) (quoting *Rosen v. Am. Israel Pub. Affairs*

*Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)).

### i.   *Conejo alleges that all of the statements at issue were false and defamatory.*

Conejo readily pleads that all of the statements at issue were false and defamatory.[2] ECF

No. 1 ¶¶ 15, 17–21; Amend. Compl. ¶¶ 22–29. "A statement is 'defamatory' if it tends to injure

the plaintiff in his trade, profession or community standing, or lower him in the estimation of the

community." *Clawson v. St. Louis Post-Dispatch,* LLC, 906 A.2d 308, 313 (D.C. 2006) (quoting

*Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C. 1990)).   To be actionable in defamation, "an

allegedly defamatory remark must be more than unpleasant or offensive; the language must make

the plaintiff appear odious, infamous, or ridiculous." *Howard Univ. v. Best,* 484 A.2d 958, 989

(D.C. 1984) (citation and quotation omitted).

---

[2] Conejo pleads that the statements at issue were "slanderous."   Construing the allegations in this *pro se* complaint liberally, the Court is cognizant that "slander" is defined as a "*defamatory assertion expressed in a transitory form*," such that speech that is "slanderous" is necessarily defamatory, as Conejo alleges here.   *See* Slander, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).

Indisputably, there is a triable issue of fact as to whether falsely accusing an individual of being a sexual predator, of having a criminal record, of being a monster, of preying on women, of being a racist, of being a misogynist, or any combination thereof, are statements that would make Conejo appear "odious" or "infamous." Conejo has plead sufficient facts to overcome a motion to dismiss on this ground.

> ii. *The statements were not privileged.*

Next, as to each of the allegedly defamatory statements, Conejo advances that AFGE's agents published them without privilege to a third party. *See id.* AFGE counters that "it is evident that the statements at issue here are entitled to an *absolute* privilege" because "[t]he processing of an unfair labor practice complaint is a quasi-judicial proceeding," and that "[s]tatements published incidental to judicial or quasi-judicial proceedings are absolutely privileged." ECF No. 19 at 20 (citing *Mazanderan v. McGranery*, 490 A.2d 180 (D.C. 1984)) (emphasis added).

The Court is unpersuaded. It is certainly true that the Supreme Court has held that certain statements by heads of executive agencies are privileged, where a person in such a position makes a defamatory statement in an appropriate exercise of the executive officer's discretion "to publish a press release under th[e] circumstances." *Barr v. Matteo*, 360 U.S. 564, 574–75 (1959). *Barr* does not stand for the wholesale proposition that "statements by government officials within the 'outer perimeter' of their line of duty are absolutely privileged," as AFGE argues that it does. ECF No. 19 at 19–20. The *Barr* Court resolved a "close" question of the statements of "a policy-making executive official" whose statement was made "in respect to matters of wide public interest." *Barr*, 360 U.S. at 574–75. *Barr* left intact the sensible rule articulated by Judge Hand, that "'it does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not

escape liability for the injuries he may so cause.'" *Id.* at 571 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). The alleged actors here are not heads of agencies nor are they policy-making executive officials, as in *Barr*. Even if they were, the alleged statements have nothing to do with matters of wide public interest.

AFGE demurs, further, that because Nelson and Mingo "were acting within their scope as representatives of federal government employees when the alleged statements were made in the unfair labor practice charges," such statements are entitled to an absolute privilege "because they were provided in the context of processing a charge of an unfair labor practice against" Conejo. ECF No. 19 at 20–21. AFGE, once again, misstates the law. For support, it points to an agency decision, where the Federal Labor Relations Authority, interpreting 5 U.S.C. §§ 7116(a)(1)–(2), explained that the FSLRMS "'gives a union license to use intemperate, abusive, or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point.'" *Naval Facilities Eng'g Command & Nat'l Fed'n of Fed. Emps., L2096*, 45 F.L.R.A. 138, 155 (1992) (quoting *Old Dominion Branch No. 46, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1984)).

First, as the Court has explained, Conejo's claims are not governed by any federal law—they are governed by state law—because Conejo does not allege an unfair labor practice within the meaning of the FSLRMS. Second, even if the Court could apply the FSLRMS to this case, it would be required to apply 5 U.S.C. § 7116(b), *not* 5 U.S.C. § 7116(a), because this dispute involves the allegedly wrongful acts of a labor organization, *not* the allegedly wrongful acts of an agency. Third, the Federal Labor Relations Authority did *not* grant wholesale, absolute immunity to such statements. It went on to say, "[the tortfeasor's published statements] [are] protected unless [they] constitute flagrant misconduct." *Id.* at 156 (citation and quotation omitted).

Accordingly, even if the Court were to entertain AFGE's argument, it would still conclude, as a matter of law, that if proven, Nelson and Mingo's statements are tantamount to "flagrant misconduct." It is far from "evident that the statements at issue here are entitled to an absolute privilege." ECF No. 19 at 20.

AFGE advances a secondary argument that "the comments at issue here are entitled to" a qualified privilege. *Id.* at 21. It argues that District of Columbia law recognizes a qualified or conditional "common interest privilege" that protects certain otherwise defamatory statements where "it is *reasonably necessary* for the protection of the actor's own interests, the interests of a third person or certain interests of the public." *Id.* at 19 (citing *Payne v. Clark*, 25 A.3d 918, 924 (D.C. 2011)) (emphasis added). According to AFGE, "there is no evidence the statements were not made in good faith." *Id.* (citing *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 566 (D.C. Cir. 1999) for the proposition that the District of Columbia recognizes *self-defense* as a qualified privilege that is a complete defense to a claim of libel or defamation). At the Rule 12(b)(6) stage, the inquiry is not whether the record contains sufficient evidence—the Court accepts all plausible and well-pleaded allegations as true, and presumes that plaintiffs do not perjure themselves in court pleadings.

AFGE next avers that Nelson's statements "were made, if at all, in good faith by him in an effort to represent a bargaining unit employee." *Id.* at 21. The Court is hard-pressed to understand the logic of AFGE's argument. As explained, Nelson allegedly made the statements *after* the agency took action against the employees, not before or during the deliberation period of such disciplinary actions. AFGE urges that "communications preliminary to a proposed judicial proceeding are absolutely privileged." *Id.* (citing *McBride v. Pizza Hut, Inc.*, 658 A.2d 205, 206–07 (D.C. 1995)).

Even if this is so, Conejo's claims are not subject to the FSLRMS procedures and, even if they were, the alleged statements were not made in contemplation of any pending quasi-judicial proceeding. The alleged statements were made months later, in response to agency action about which AFGE members were dissatisfied. AFGE concedes this point in its response. *See id.* at 22 (pointing to, and thus admitting, the contents of Nelson's November 23, 2017 e-mail to Conejo, in which Nelson accuses Conejo of having "a documented history of abusing women, and causing episodes of multiple suicide attempts"; states that Conejo "is an employee [the GPO] should not want at [its] agency"; and confirms that AFGE or its agents requested that the Inspector General and certain "Congressional representatives" make an investigation into Conejo's conduct, based upon the allegedly defamatory and false statements).

AFGE then argues that its agents were entitled to disclose the false and defamatory statements to Senator Shelby and Representatives Cummings and Harper because, according to AFGE, it "can be presumed because these [C]ongressmen sit on committees overseeing the Agency that they have a common interest with Mr. Nelson in promoting the efficiency of federal service to include prohibiting illegal discrimination against its employees." *Id.* at 23. It further argues that the Inspector General and the Special Counsel's Office indisputably "have a common interest in ensuring that GPO management does not violate the civil rights of its employees." *Id.* These *post hoc* justifications do not pass muster and are wholly insufficient to sustain a motion to dismiss as a matter of law.

> iii.    *Conejo pleads that AFGE or its agents' conduct was at least negligent.*

The third element of a defamation cause of action in the District of Columbia requires a plaintiff to plead facts which, if proven, demonstrate "that the defendant's fault in publishing the statement amounted to at least negligence." *Burke*, 91 A.3d at 1044 (citations omitted). Here,

Conejo has alleged that all of the statements in question were either made recklessly or intentionally. *See* ECF No. 1 ¶¶ 15, 17–21; Amend. Compl. ¶¶ 22–29. Each of these standards exceeds the "negligence" standard. AFGE does not oppose these allegations, and thus they are deemed admitted for the purpose of its motion to dismiss.

> iv. *The alleged statements are either actionable* per se *or Conejo has alleged that he suffered special harm as a result of the statements.*

Fourth and finally, a plaintiff may defeat a motion to dismiss a defamation claim where he pleads "either that the statement[s] w[ere] actionable as a matter of law irrespective of special harm or that [their] publication caused the plaintiff special harm." *Burke*, 91 A.3d at 1044 (citations omitted). Special harm, also known as "special damages," is limited to "actual pecuniary loss, which must be specially pleaded" at this stage. *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1451 (2012).

Here, Conejo has alleged that "[a]s a consequence of such acts perpetrated against him by [AFGE], through its authorized agents/representatives," Conejo "has suffered and continues to suffer career damage, loss of consideration for career advancement, personal and professional embarrassment and humiliation, and emotional pain and suffering." Amend. Compl. ¶ 33. Conejo values such harm at $411,597.00 in compensatory damages and $3,500,000.00 in punitive damages. He has thus met the pleading standard for the purposes of overcoming a motion to dismiss. AFGE does not argue otherwise. Moreover, pending further evidentiary development, Conejo's allegations tend to establish that certain claims may be actionable as defamation or libel *per* se, which requires no showing of special harm. *See Burke*, 91 A.3d at 1044.

For all of the foregoing reasons, the Court shall deny AFGE's motion to dismiss as to Conejo's defamation claims. As AFGE does not move to dismiss Conejo's slander, libel, or libel

it—the parties have not yet engaged in discovery. AFGE moved to dismiss, not for a judgment on the pleadings.

AFGE provides no other legal argument or factual basis for the Court to dismiss the false light invasion of privacy claims against it, for the conduct of its agents. Thus, the Court will examine whether Conejo has pleaded each of the elements of such a claim to ascertain whether such allegations, if proven, would establish a *prima facie* case of false light invasion of privacy.

First, Conejo has pleaded that each of the statements in question was made public. For the purposes of the invasion of privacy torts, "publicity" means "'that the matter is made public' by having been communicated to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge.*'" *Armstrong*, 80 A.3d at 189 (citing and adopting *Steinbuch v. Cutler*, 463 F. Supp. 2d 1, 3 (D.D.C. 2006)) (emphasis in original). Substantial certainty, for these purposes, requires a "broader dissemination than a mailing of a handful of employees at a single agency." *Id.*

In this case, Conejo has alleged that AFGE or its agents have disseminated the statements to, *inter alia*, three Members of Congress, the D.C. NAACP, the ACLU, and to the Office of Special Counsel. Therefore, there exists a triable issue as to whether the matter is or was "substantially certain to become one of public knowledge."

Next, Conejo expressly and unambiguously states that all of the "statements" in question were about Conejo and were "false." ECF No. 1 ¶¶ 15, 17–21; Amend. Compl. ¶¶ 22–29. AFGE simply responds, "[p]roof that Mr. Nelson's statements are false alone is insufficient to show malice." ECF No. 19 at 25. True as this may be, it is irrelevant to the inquiry of whether Conejo pleads the second and third elements of an invasion of privacy claim. *See Armstrong*, 80 A.3d at

*per se* claims, and because the Court finds that Conejo states cognizable claims under those theories, the Court shall order that those causes of action remain ripe and viable.

### d. Conejo states a plausible claim of false light invasion of privacy under District of Columbia law.

To state a claim for false light invasion of privacy under District of Columbia law, a plaintiff must plead facts which, if true, would establish "'(1) publicity (2) about a false statement, representation, or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013) (quoting *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999)). To be sure, the elements are similar to those of a defamation claim, and "a plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Id.* (citations omitted).

Where, as here, a plaintiff relies upon "the same allegations" to establish false light invasion of privacy claims as to establish defamation claims, the District of Columbia Court of Appeals "analyze[s] them in the same manner." *Id.* AFGE construes this canon of analysis to require Conejo to "either: (1) provide 'extrinsic proof' that Mr. Nelson produced and used the statement[s] with express malice, or (2) demonstrate that the statements are so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that Mr. Nelson was actuated by express malice." ECF No. 19 at 25 (citing *Blodgett v. Univ. Club*, 930 A.2d 210, 224 (D.C. 2007)). It argues that because Conejo "has failed to produce any evidence or pleadings sufficient to meet this demanding standard," he cannot overcome a motion to dismiss.

Once again, AFGE is mistaken. The Court is entertaining a motion to dismiss, not a motion for summary judgment. Thus, it is irrelevant that the Court does not have all of the evidence before

188. The Court finds as a matter of law that Conejo has sufficiently pleaded those elements for the purposes of the motion to dismiss.

Finally, Conejo sufficiently alleges that each of the alleged statements places him in a false light that would be offensive to a reasonable person for the purposes of the motion to dismiss. "While determining offensiveness in an invasion of privacy case is usually the province of the jury, the trial court must make the threshold determination of offensiveness in determining the existence of a cause of action." *Wolf v. Regardie*, 553 A.2d 1213, 1219 (D.C. 1989) (citations omitted). The Court must assess the offensiveness of this alleged conduct against the yardstick of the "'ordinary, reasonable person' standard, not that of a reasonable" management official. *Kitt*, 742 A.2d at 860 (quoting *Wolf*, 553 A.2d at 1219).

Here, accepting all of the allegations in Conejo's complaint as true, as the Court must do at this stage, the Court finds as a matter of law that a common, reasonable person would be rightly offended by false statements of his professional associates of the kind with which Conejo charges AFGE and its agents in this case. It is beyond peradventure that a reasonable jury could conclude likewise should the case proceed to trial. Accordingly, the Court shall deny AFGE's motion to dismiss Conejo's false light invasion of privacy claims.

**III.)   CONCLUSION**

For all of the foregoing reasons, defendant's Motion to Dismiss is will be **DENIED**. A separate order shall issue.

SIGNED this **29th** day of March, 2019.

Royce C. Lamberth
United States District Judge